IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FIBULA MUCHEVHERAT SAN. TIC. A.S., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:08-cv-1205 |
| FIBULA GLOBAL LLC, *et al.*, | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF
<u>ITS MOTION FOR A WRIT OF REPLEVIN</u>**

Plaintiff Fibula Muchevherat San. Tic. A.S. ("Plaintiff" or "Fibula Turkey") respectfully submits this Reply Memorandum in Further Support of its Motion for Writ of Replevin and in response to Defendants' Memorandum in Support of Defendants' Opposition to Plaintiff's Motion for Writ of Replevin (the "Opposition" or "Opp."). In their Opposition, Defendants conspicuously ignore their express contractual obligations under the Consignment Agreement to return Plaintiff's jewelry "immediately," and, remarkably, instead seek to impose unwarranted obligations, restrictions, and limitations on the *Plaintiff*.

The majority of the Opposition consists of a counter-recitation of "facts" related to Defendants' as-yet-unasserted "counterclaim" to the allegations in the Verified Complaint that are not at all relevant to the resolution of Plaintiff's Motion for Writ of Replevin and supporting Memorandum ("Plaintiff's Motion"). However, tucked within the Opposition's irrelevant assertions are three important factual concessions that undermine Defendants' contentions and actually support Plaintiff's Motion. Specifically, in their Opposition, Defendants concede and admit the following: (1) Plaintiff Fibula Turkey is the rightful owner of the jewelry at issue

(Opp. at 4 referring to "Fibula/Turkey's jewelry," and Opp. at 13 "there is no dispute here as to the ownership of the goods in question"); (2) Defendants retain possession and control over Plaintiff's jewelry (Opp. at 8 "Fibula held and continues to hold the jewelry"); and (3) Plaintiff notified Defendants of the termination of the Consignment Agreement (Opp. at 8). Based on these concessions alone, Plaintiff is entitled to the remedy of replevin of its jewelry.

The purported defenses and arguments raised in Defendants' Opposition are misplaced or are unavailing, and should be rejected for the reasons set forth below.

## ARGUMENT

**I.  THE CONSIGNMENT AGREEMENT PROVIDES PLAINTIFF WITH AN IMMEDIATE RIGHT TO REPOSSESSION OF ITS PROPERTY**

The entire consignment relationship in this case is governed by the May 13, 2007 Consignment Agreement. Nowhere in Defendants' 17-page Opposition do they mention that the Consignment Agreement expressly provides for "immediate" return of Plaintiff's jewelry by Defendants, upon termination of the agreement. *See* Consignment Agreement § 9.4 ("In case of termination by CONSIGNOR, the CONSIGNEE is obliged to redeliver all Products under its possession **immediately**") (Exhibit B to Plaintiff's Motion for Writ of Replevin) (emphasis added). Plaintiff terminated the Consignment Agreement by written notice dated April 12, 2008. *See* Plaintiff's Motion at 3 (attaching termination notice letter as Exhibit D). Defendants concede that Plaintiff terminated the Consignment Agreement. Opp. at 8. Under the contractual terms of the consignment, Defendants were obligated to return and "redeliver all products" of Plaintiff "under its possession immediately." Consignment Agreement § 9.4. Despite Plaintiff's repeated written demands and the filing of this lawsuit, Defendants refuse to return Plaintiff's jewelry in violation of their express contractual obligations.

Defendants' sole rationale for unlawfully withholding Plaintiff's jewelry is the contention that Defendant Fibula Global LLC has a "possessory" or "common law lien"[1] against Plaintiff's jewelry. Opp. at 9-13. This defense has no merit and must be rejected for two reasons. First, no common law lien exists in this case as such liens are available only where artisans and laborers make physical improvements or repairs to personal property left with them by the owner. *See Villacres v. Hadded*, 184 A.2d 634, 636 (D.C. 1962) ("The common law gave 'a lien to all artisans, tradesmen and laborers entrusted with chattels by the owner for the purpose of repairing or improving the value of such chattels, for their just charges'") (internal citation omitted); *see also* 51 Am. Jur. 2d *Liens* § 25 (physical improvement to chattels is an element necessary to establish common law lien). The Defendants have not and cannot claim they made any physical improvements to Plaintiff's jewelry, or that the Plaintiff entrusted its jewelry to Defendants for such a purpose, and thus no common law or possessory lien was created in this case.

Second, the consignment relationship in this case was created and is defined by the Consignment Agreement. Defendant Fibula Global contractually agreed and is bound to **immediately** return the Plaintiff's property upon termination of the consignment. The express terms of the Consignment Agreement controvert and prevent the Defendants' attempt to unilaterally assert a "possessory lien" against Plaintiff's property. *See Carl v. Children's Hosp.*, 702 A.2d 159, 181 n.13 (D.C. 1997) (Schwelb, J., concurring) (acknowledging the importance of parties' freedom to contract as they desire) (quoting *Baltimore & Ohio Southw. Ry. Co. v. Voigt*, 176 U.S. 198, 505 (1900)); *cf.* 51 Am. Jur. 2d *Liens* § 59 (recognizing that parties may waive

---

[1] In their Opposition, Defendants reference certain statutory liens, but do not contend that a statutory lien exists in this case. Indeed, the references to statutory liens are irrelevant because none of the statutory liens recognized by the D.C. Code is applicable to the Defendants' contentions, particularly where the possession and ownership rights of the jewelry is governed by an express contract executed and acknowledged by all parties.

rights to possessory liens through contractual provisions); *cf. Welded Tube Co. of Am. v. Phoenix Steel Corp.*, 512 F.2d 342, 345 (3d Cir. 1975) (finding waiver of possessory lien by applying common law principles, but applying common law principles only because "[t]here are no contractual limitations on possession involved here"). There is no contractual provision permitting Defendants to retain Plaintiff's jewelry under any circumstances following termination. Although the Consignment Agreement provides that both parties "preserve their rights to collect due amounts" from each other, those rights clearly do not include any possessory lien or other right to withhold Plaintiff's property as collateral for amounts claimed due. Indeed, the very next clause of the contract dictates that upon termination, "the CONSIGNEE is obliged to redeliver all Products under its possession immediately."

Nor can Defendants rely upon § 9.5 of the Consignment Agreement to justify their unlawful withholding of Plaintiff's jewelry, because that clause refers only to collecting due payments "regarding the sale of Products" and Defendants have not asserted, and cannot assert, any claims "regarding sale of Products."[2] Furthermore, this provision must be read together with the immediately preceding contractual provision (§ 9.4) which requires the **immediate** re-delivery to Plaintiff of the jewelry in Defendants' possession. Thus, the Defendants' characterization of § 9.5 (*i.e.*, to permit Defendants to withhold Plaintiff's jewelry until they unilaterally decide Plaintiff has paid any and all expense amounts they claim) must be rejected because it would impermissibly render meaningless the "**immediate**-return" contractual

---

2   This provision appears in the Article of the Consignment Agreement entitled "Term and Termination," and by its express words and surrounding context plainly and simply provides that any rights to collect due payments *resulting from sales of jewelry* survive the termination of the Consignment Agreement. *See* Consignment Agreement § 9.5 ("*In case of termination by the CONSIGNOR*, the CONSIGNEE, if any, preserves its rights to collect due payments from CONSIGNOR *regarding sale of Products*" (emphasis added)).

provision in § 9.4. *See Air Line Pilots Assoc., Int'l v. Pension Benefit Guaranty Corp.*, 193 F. Supp. 2d 209, 218 n.4 (D.D.C. 2002) ("It is a well-established principle that when interpreting statutes or contractual provisions, a court should 'absent a clear indication to the contrary, ... read the statute [or provision] so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory'") (citing Norman J. Singer, Sutherland Stat. Const. § 46.03).

The existence here of an unqualified and unambiguous contractual provision requiring the **immediate** return of Plaintiff's jewelry demonstrates that the cases upon which Defendants rely in their Opposition are inapposite. Indeed, the Defendants' cases did not address a consignor's attempts to re-gain its property from its consignee, much less in circumstances, as here, where an express contractual provision mandated the return of the consignor's property. *Cf. Wilson v. Highway Serv. Marineland,* 418 A.2d 462, 464-65 (Pa. Super. 1980) (applying common law lien principles, where no contract governed relationship, but where defendant satisfied elements of common law lien by making repairs and physical improvements to plaintiff's boat).3 Rather, Defendants' cases addressed disputes between consignees and *unrelated third-parties* asserting rights to the property held by a consignee, or similarly inapplicable circumstances.

For example, in *Costikyan v. Sloan*, the contract between the consignor and consignee was not at issue; rather, the court – *in the absence of any express agreement between the*

---

3    The elements of a common law lien cited and relied upon by the *Wilson* court are the same as the elements recognized in D.C. courts in *Villacres v. Hadded*, 184 A.2d 634, 636 (D.C. 1962). *See Apt. Owners & Mgrs Cmte. v. Brown*, 382 A.2d 473, 477 (Pa. Super. 1977), *rev'd on other* grounds, 410 A.2d 747 (Pa. 1980) ("Whenever a workman or artisan, *by his labor or skill, increases the value of personal property placed in his possession to be improved*, he has a lien upon it for his proper charges until paid") (citation omitted) (emphasis added).

*consignor and a third-party auctioneer* – found that the consignor knowingly ratified the expenses incurred by the auctioneer. *See* 33 App. D.C. 420, 1909 WL 21476 at *5 (D.C. Cir. 1909).[4]  Unlike the decisions cited by Defendants, in this case the issues of ownership and right to property possession are expressly governed by contractual agreement between the parties, and these contractual agreements control over Defendants' manufactured common law lien claim.

Defendants' self-imposed possessory lien argument, if accepted, would permit any person or entity in possession of another's property to hold the other's property for ransom until extracting payment that it unilaterally deemed sufficient, without regard to the contractual obligations governing the consignment relationship.  The law certainly does not favor the self-help scenario urged by the Defendants that completely disregards contractual rights and obligations.  Defendants' theory contends that, notwithstanding express contractual obligations to the contrary, they should have the unilateral right to:  a) hold and refuse to return Plaintiff's jewelry indefinitely after its return has been demanded, b) sell Plaintiffs' jewelry without permission and retain the proceeds for themselves, c) remove Plaintiff's jewelry from the District and pledge it as collateral in New York or other states without Plaintiff's knowledge or permission, and d) continue to charge Plaintiff for expenses and unauthorized actions (including sales of Plaintiff's jewelry) after the contract has been terminated.  Incredibly, Defendants have admitted to doing all of these things, none of which are permitted under the Consignment Agreement or otherwise, and all of which clearly violate Plaintiff's rights to recover its own property.

---

4    Upon the consignor's motion for writ of replevin against the third-party auctioneer in *Costikyan v. Sloan*, the court noted that the consignee breached the consignment agreement by pledging the consignor's property to an auctioneer for the consignee's own debt, in circumstances similar to those in the instant case. *See* 33 App. D.C. 420, 1909 WL at *3.

## II. DEFENDANTS HAVE CONCEDED THAT PLAINTIFF IS THE RIGHTFUL OWNER OF THE JEWELRY, OBVIATING ANY NEED FOR "SECURITY"

The Opposition's suggestion that a surety bond or other security is necessary to resolve the Plaintiff's replevin motion misconstrues the very purpose for a surety bond and should be rejected. Generally, the sole purpose of a replevin bond is to protect the defendant in the event that the plaintiff lacks valid title to the property taken from the defendant. *See York Ice Mach. Corp. v. Robbins*, 185 A. 626, 627 (Pa. 1936) ("A replevin bond, …, is security for the value of the goods replevied and damages consequential upon their taking and for costs, *if it is shown that plaintiff had no right or title to them*.") (emphasis added). The procedural safeguards set forth in the D.C. Code and the D.C. Superior Court Rules governing replevin actions similarly are designed solely to protect the rightful owner of the property at issue in replevin actions, which in this case indisputably is the Plaintiff.[5]

There is no need or basis for a surety bond or other security in this case because, as Defendants concede, "there is no dispute here as to the ownership of the goods in question." Opp. at 13. Moreover, Defendant Fibula Global LLC explicitly acknowledged in the Consignment Agreement that, "The CONSIGNEE agrees that the CONSIGNOR is the sole owner of all Products and accepts that all rights of Products are reserved by CONSIGNOR." Consignment Agreement § 4.3. Furthermore, Defendants fail to cite as authority any federal case in the District of Columbia requiring plaintiffs to post a bond for writ of replevin, except for

---

5   Because a plaintiff need only show "the probable validity" of its claim in a summary hearing before obtaining the remedy of replevin, D.C. Sup. Ct. Rule 64-II, the D.C. Code provides defendants with an opportunity to petition the court for return of the property to the defendants upon a showing that the defendants' possession of the property was valid. *See* D.C. Code § 16-3708(a). However, the court may outright deny the defendants' petition upon determining that the defendants retained the plaintiff's property without authority. *Id.* § 3708(b). These statutory provisions reveal that the purpose of a bond and these additional procedural safeguards is to protect the rightful owner of the property at issue.

a case in which ownership and rightful possession of the property at issue were in dispute, in contrast to the circumstances in this case.  *See Southland Corp. v. Godette*, 793 F. Supp. 348 (D.D.C. 1992).  Accordingly, there is no need or legitimate purpose requiring Plaintiff to post a bond to recover property that Defendants acknowledge belongs to Plaintiff.

The Defendants' additional arguments asking this Court to require Plaintiff to post a bond are entirely unfounded.  Indeed, the Opposition readily admits that these attempts are wholly unrelated to the Plaintiff's replevin motion, but instead are designed as an attempt to obtain security for their as-yet-unasserted counterclaim against the Plaintiff.  *See* Opp. at 14.  Where the ownership of the property is not at issue, as in this case, there is no legal basis for Defendants to impose any requirements on the Plaintiff.  Moreover, Plaintiff should not be required to guess at the nature and substance of any as-yet unfiled counterclaim that Defendants "intend" to file.  *See* D.C. Code § 16-501(d) (setting forth pre-judgment attachment procedures that apply only to *defendants* in actions that already have been filed).[6]

Furthermore, the three cases cited as purported authority in the Opposition do not support Defendants' request for a bond, as they are all clearly distinguishable.  *See* Opp. at 15 (citing *Montserrat Overseas Holdings, S.A. v. Larsen*, 709 F.2d 22 (9th Cir. 1983); *S.R. Galves Participacao, Importacao & Exportacao Ltda. v. Natural Source Int'l Ltd.*, No. 06 Civ 10182, 2007 U.S. Dist. LEXIS 37108 (S.D.N.Y. May 21, 2007); *A.L. Int'l Holdings, Inc. v. SurgiCare,*

---

[6] Defendants' contention that the Plaintiff should be required to post a bond, on the presumption that it "lacks assets" in this country, is particularly ironic because Defendant Fibula Global – under the direction of Defendants Karabassis and Poyraz – itself lacks assets in the United States sufficient to satisfy a judgment in Plaintiff's favor on the remaining counts in the Complaint.  To the extent that Defendants argue that the Plaintiff should be required to post security to satisfy a judgment based on Defendants' "information and belief," then so too should the Defendants – including Karabassis and Poyraz individually – be required to post security sufficient to satisfy not only the replevin action, but also the conversion count in the Complaint, as well as liability for their share of any judgment against Defendant Fibula Global.

*Inc.*, No. 03 Civ. 2481(MBM), 2003 U.S. Dist. LEXIS 20561 (S.D.N.Y. Nov. 10, 2003)). First, the courts' analyses in all three cases were based upon application of the Local Rules of those courts, none of which is applicable here. Second, none of the bonds requested in the cases cited by Defendants were to secure a plaintiff's motion for writ of replevin, as in the instant case. Third, there were unique or extraordinary circumstances supporting the need for a bond in those cases which do not exist in this case. For example, the court in *Montserrat* cited the plaintiff's "vexatiousness in the prosecution of the suit" as a justification for requiring the plaintiff to post a bond. *See* 709 F.2d at 24. Similarly, in *Natural Source*, the decision balanced the harms to the parties, and determined that the requesting party faced "irreparable harm" due to the perishable product at issue, the existence of an international injunction, and an ongoing business relationship with the warehouse holding the product. *See* 2007 LEXIS at **7-8. None of these factors or circumstances is applicable here and thus Defendants' reliance on these cases to support its request for a replevin surety bond is misplaced.

There is also no factual basis to support Defendants' request for a replevin surety bond. Specifically, Defendants seek "security" from Plaintiff in the amount of $355,000, Opp. at 1, even though more than $255,000 worth of Defendants' so-called expenses were supposedly incurred <u>*after* the Plaintiff terminated the Consignment Agreement</u>, including "compensation for Mr. Poyraz's time and efforts dedicated to marketing and selling Fibula/Turkey jewelry" <u>after the contract's termination</u>. *See* Opp. at 8, 9 (contending Defendant Fibula Global had incurred $97,894 worth of expenses through March, 2008, shortly before Plaintiff's first written notice of

termination of the Consignment Agreement on April 12, 2008, *see* Ex. D to Plaintiff's Motion).[7] In short, Defendants' bond request is unwarranted by fact or law, and should be rejected.[8]

The Opposition's offer to deposit the Plaintiff's jewelry with the Court for the "duration of this Action" (Opp. at 15) constitutes a blatant mischaracterization of the relief requested by the Plaintiff. The Plaintiff's Motion requested the immediate return of its jewelry or, in the alternative, a writ requiring Defendants to deposit the jewelry with this Court pending an expedited hearing to determine the rightful owner of the jewelry. *See* Plaintiff's Motion at 8. Plaintiff requested this alternative remedy only pending the outcome of the hearing on the Motion for Writ of Replevin, *not* the final resolution of all of the claims in this litigation, as the Opposition suggests.

### III.   THE MOTION FOR WRIT OF REPLEVIN IS PROPERLY DIRECTED TO ALL DEFENDANTS

The authority cited by Defendants in the Opposition establishes that Messrs. Karabassis and Poyraz are proper subjects of a Writ of Replevin. According to the Opposition, a writ of replevin is appropriate against a defendant who can "exercise control" over the property. *See* Opp. at 16 (citing *Vermont v. Wetherbee*, 866 A.2d 527, 534 (Vt. 2004)). While Defendants

---

[7]   The Defendants concede that the Plaintiff has *already* provided Defendants with almost $230,000 in cash to cover expenses incurred prior to termination of the Consignment Agreement. *See* Declaration of Mustafa Poyraz ¶ 15 (Plaintiff remitted $62,000 to Fibula Global); ¶ 18 (Plaintiff sent $141,000 to Fibula Global); ¶ 22 (Plaintiff paid $25,000 to Fibula Global) (attached as Exhibit A to the Opposition).

[8]   The Opposition's conclusory claim that Defendant Fibula Global will be left "without redress," for an action on its unasserted counterclaim (Opp. at 14), is simply wrong. Even assuming Defendants could prevail on a legal counterclaim – which they cannot – Defendants have the ability to enforce a judgment either domestically or abroad, in precisely the same way that Plaintiff (a Turkish company) has been forced to file suit and seek replevin in the United States, due to Defendants' wrongful withholding of its property. Parties can sue and be sued for contractual breaches, but cannot elect to pursue unlawful self-help remedies as leverage or collateral for amounts they claim are due.

concede that the jewelry resides in Fibula Global LLC's safe, both Karabassis and Poyraz can exercise control over the jewelry. For example, Defendant Poyraz admits that he personally took possession of $25,000 worth of Plaintiff's jewelry, which he brought to New York and pledged as collateral in exchange for a loan, without ever disclosing the property belonged to Fibula Turkey or was in any way related to amounts allegedly owed Fibula Global LLC. *See* Declaration of Mustafa Poyraz ¶ 26 (attached as Exhibit A to the Opposition). Likewise, Defendant Karabassis similarly can exercise control over the jewelry. Based on publicly-available records, Mr. Karabassis operates several businesses out of the 3236 Prospect Street, NW address of Fibula Global LLC, and has control over the property and access to the safe located therein. *See also* E-mail from Assistant Controller of "I.K. Enterprises, Inc.," located at 3236 Prospect St. NW (attached as Exhibit 7 to the Opposition).[9]

Furthermore, the Opposition's unsupported contention, that Karabassis and Poyraz "in all actions relevant to this action have acted in their corporate capacity," is totally unsupported and questionable at best. Specifically, Poyraz has admitted purloining Plaintiff's jewelry to New York to pledge for a loan, in direct violation of Sections 4.4 and 4.7 the Consignment Agreement. *See Costikyan*, 33 App. 420, 1909 WL at *3 ("Having possession of the goods as factors and agents of the plaintiffs, [the consignee] had no authority to pledge them for a debt of their own, or for advances made to them"). Likewise, through the Opposition, Poyraz and Karabassis concede Plaintiff's ownership of the jewelry, but have repeatedly refused to return the jewelry in accordance with § 9.4 of the Agreement. These actions are inconsistent with the fiduciary obligations of Poyraz and Karabassis to Fibula Global LLC to honor its contractual obligations, and well may constitute *ultra vires* actions for which they are personally liable.

---

9   It is not known if the safe is owned by Fibula Global LLC or Mr. Karabassis.

Defendants also have not provided any evidence to substantiate the claim that the actions by Karabassis and Poyraz were taken solely in their "corporate" capacities. To the contrary, based on their own admissions, it would be premature at this stage to determine that Karabassis and Poyraz should not also be subject to a Writ of Replevin, particularly where they each have access to and can exercise control over the jewelry.

## CONCLUSION

For all of the foregoing reasons and those set forth in the Motion for Writ of Replevin and supporting Exhibits, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and provide the remedies requested therein.

Date:  August 8, 2008

>Respectfully submitted,
>
>REED SMITH LLP
>
>By: /s/ *Lawrence S. Sher*
>    Lawrence S. Sher
>    D.C. Bar No. 430469
>    Andrew C. Bernasconi
>    D.C. Bar No. 484614
>    1301 K Street NW
>    Suite 1100 – East Tower
>    Washington, DC 20005
>    (202) 414-9200
>    (202) 414-9299 (fax)
>    lsher@reedsmith.com
>    abernasconi@reedsmith.com
>
>    *Counsel for Plaintiff Fibula Muchevherat San. Tic. A.S.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 8th day of August, 2008, a copy of the foregoing Plaintiff's Reply in Further Support of Motion for Writ of Replevin, was served via U.S. first-class mail, postage prepaid, and electronic delivery by e-mail pdf attachment, upon the following:

>Ronan J. McHugh, Esq.
>Akin Alcitepe, Esq.
>Thelen Reid Brown Raysman & Steiner LLP
>701 Eighth Street, N.W., Suite 800
>Washington, D.C. 20001
>
>/s/ *Lawrence S. Sher*